STATE of Missouri, Respondent,

v.

Steven CARVER, Appellant.

No. WD 48639.

Missouri Court of Appeals,
Western District.

Dec. 13, 1994.

Gary E. Brotherton, Office of the State Public Defender, Columbia, for appellant.

Philip M. Koppe, Asst. Atty. Gen., Kansas City, for respondent.

Before HANNA, P.J., and
BRECKENRIDGE and SMART, JJ.

HANNA, Presiding Judge.

The defendant, Steven L. Carver, was convicted by a jury in Benton County, Missouri, of a class D felony of tampering with physical evidence, § 575.100.1(1), RSMo 1986, and sentenced to three years imprisonment. The sole issue on appeal is whether the state proved that the defendant "concealed the revolver with the purpose of impairing its availability in an 'official investigation'" because, the defendant argues, the investigation had not commenced when the defendant hid the weapon. We recite the facts most favorable to the verdict.

During the evening of January 20, 1993, Randy Benedict ran into the lounge of the Lincoln Fuel Stop in Lincoln, Missouri, and announced that Danny Risner had been shot or had shot himself. He asked that an ambulance be called. The defendant and Mike Treadway followed Mr. Benedict out of the lounge and into the garage area. Larry Sutton, the truck stop owner, instructed his wife to call the police and then left for the garage. When he saw Mr. Risner lying on the floor with his head in his brother's lap, he realized an ambulance was needed so he ran into the truck stop's convenience store and called the Benton County Sheriff's Department.

When the defendant got to the garage, he asked Mr. Benedict where the gun was located. Mr. Benedict said he had put the gun into the toolbox. The defendant went to the toolbox, picked up the gun and then, realizing that his fingerprints were on it, tossed the gun into the oil pit. He then retrieved the

gun, went outside and threw it onto the roof of the restaurant.

After Mr. Sutton returned from notifying the Benton County Sheriff he saw the defendant and Mr. Treadway. He heard one of them say, to "get it or retrieve it," or words to that effect. The defendant commenced walking toward the east end of the building. Mr. Sutton believed that the defendant was acting "awful strange" and decided to follow him. Mr. Sutton saw a figure running across the roof of the restaurant, and noticed a ladder propped up against the building. He then observed the defendant climbing down the ladder from the roof carrying a revolver. When asked, the defendant admitted having taken the revolver and thrown it up on the roof. He said that he was retrieving it to bring it back into the bay area. Mr. Sutton told him, "You better get it back in there in a hurry." The defendant, upon returning to the garage area, threw the gun into a bucket of oil.

Two Missouri highway patrolmen were the first to respond to the scene of the shooting. After attempting to administer aid to Mr. Risner, they began searching for the weapon that had been used in the shooting. They were directed to the defendant. The gun, a Herbert Schmidt–Hawes .22 caliber revolver, was located in the oil pit in a bucket of oil. The defendant told the Benton County Sheriff's Department chief deputy and the highway patrol investigating officer that he had picked up the gun and decided to hide it.

The Benton County chief deputy testified that the investigation could have had a different outcome if the revolver had not been moved and tampered with. He testified that they probably could have lifted fingerprints from the weapon.[1]

The defendant maintains that he did not impair or conceal the availability of the revolver in an "official investigation" since the investigation had not yet commenced when he hid the revolver. Section 575.100, RSMo 1986, states in pertinent part:

1. A person commits the crime of tampering with physical evidence if he:

(1) Alters, destroys, suppresses or conceals any record, document or thing with purpose to impair its verity, legibility or availability in any official proceeding or investigation;

Tampering with physical evidence is a class D felony if the underlying crime involved is a felony, otherwise it is a class A misdemeanor. § 575.100.2, RSMo 1986.

The defendant cites *State v. Bulloch,* 826 S.W.2d 83 (Mo.App.1992), in support of his argument that the case should not have been submitted to the jury. In *Bulloch,* this court held that an "official proceeding" was not pending when the defendant, after realizing that he had killed his wife by asphyxiation, proceeded to burn the tape which had covered her face and mouth, tape spools, some sexual paraphernalia, his wife's diary and his wife's body. *Id.* at 84. Among other charges, the defendant was charged and convicted of tampering with physical evidence pursuant to § 575.100, on the theory that he destroyed and altered items of evidence connecting him to the murder of his wife in order to impair an "official proceeding." *Id.* at 84–85. The conviction was reversed because there was no "official proceeding" pending at the time the defendant destroyed the evidence. *Id.* at 85. The court noted the distinction between the terms "official proceeding" and "investigation," stating that "the charge against defendant was not that he intended to impair the availability of the evidence in an investigation, but in an official proceeding, namely, 'the prosecution of Dennis N. Bulloch for the crime of homicide, a felony.'" *Id.* The reversal was premised upon the fact that there was no "official proceeding" pending at the time the defendant destroyed the evidence. *Id.* at 85.[2]

In this case, Mr. Carver was charged pursuant to § 575.100.1 with impairing the availability of the evidence in an official investiga-

1. One Sandra Benedict was charged with second degree murder and armed criminal action in connection with the shooting.

2. *Bulloch* relied on *State v. Todd,* 805 S.W.2d 204 (Mo.App.1991), which discussed § 575.270.1, RSMo 1986. That statute deals with tampering with a witness in an official proceeding, and does not mention an "investigation."

tion. The owner of the Lincoln Fuel Stop immediately instructed his wife to call the police when he heard there had been a shooting. When he saw the victim lying on the floor of the garage, he immediately called the Benton County Sheriff's Department. Mr. Sutton then returned to the back of the building where he saw the defendant climb down from the roof carrying the revolver that had been used in the shooting. The defendant admitted that he then took the revolver back to the bay area and concealed it in a bucket of oil.

It may be that the investigation had not begun when the defendant threw the gun on the roof but it is clear that the sheriff's department had been summoned and informed of the shooting when the defendant retrieved the gun from the roof and put it in the oil bucket. Testimony by the chief deputy of the Benton County Sheriff's Department emphasized that his department investigated all shootings that occurred in Benton County whether they were reported as homicides or suicides. He testified that the department began its investigation as soon as a possible offense was reported to their department. In the present case, it was the duty of the dispatcher who received the initial call to gather preliminary information such as who was involved, whether the suspect was armed, and other relevant circumstances surrounding the matter.

The defendant here was charged with impairing an official investigation and not an official proceeding as in *Bulloch* and *Todd.* Therefore, even though an "official proceeding" did not begin until quite some time later with the filing of charges, the investigation commenced immediately.

There was substantial evidence from which the jury could have found beyond a reasonable doubt that the defendant's concealment of the murder weapon in a bucket of oil occurred after the "official investigation" had been initiated.

Judgment affirmed.

All concur.